**UNITED STATES of America,**
**Appellee,**
**v.**
**Richard Dale METCALF, Appellant.**
**No. 20098.**

United States Court of Appeals,
Eighth Circuit.
Sept. 2, 1970.

Murray L. Randall, St. Louis, Mo., for appellant; Richard L. Daly, St. Louis, Mo., on brief.

Peter T. Straub, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Circuit Judge, JOHNSEN, Senior Circuit Judge, and HEANEY, Circuit Judge.

JOHNSEN, Senior Circuit Judge.

The appeal is by Richard Dale Metcalf from convictions of (1) possessing goods stolen from an interstate shipment, 18 U.S.C. § 659, and (2) having conspired with others to effect the possession, 18 U.S.C. § 371.

The violations were made the subject of joint indictment charges against appellant, one Sheppard, his brother-in-law,

and one Stackhouse, a friend of both. The indictment also alleged that one James had participated in the conspiracy, but it did not make him a defendant. Stackhouse pleaded guilty to the charges; dismissal was made on motion of the Government as against Sheppard; and appellant alone was tried. He was sentenced to five years imprisonment on each count, with the sentences to run concurrently.

There is no contention here that the evidence is insufficient to sustain appellant's conviction, nor on the record before us would it be possible to urge such a contention. In fact, the proof of his guilt is so strong that it would be difficult to see how any jury could reasonably reach a different result. While we need not in this situation detail all the evidence, a statement of some of the facts which the jury could properly find will help to put into proper perspective and significance the single contention of error which appellant's experienced counsel has been able to construct out of the whole of the trial proceedings.

The single contention made is that the convictions should be reversed for the admission of a bit of testimony on the part of a witness as to a conversation which she had overheard between Sheppard and appellant regarding Stackhouse. We find, as discussed later, that the contention is devoid of any substance, and we affirm the convictions.

The stolen goods consisted of 45 boxes of trousers or "Levi's" in interstate shipment, which were contained in a trailer standing at the freight dock of a trucking company in St. Louis, Missouri. The theft was effected by Stackhouse's procuring a tractor somewhere, driving it to the freight dock at night and hauling the van away. He proceeded from there to Beeleman's Lounge, a tavern, where he and the other three alleged conspirators had been assembled and conferring together for a time until he left the group to set out on the theft venture. Another such meeting had also been held earlier in the day at the Oasis Bar, a tavern owned by appellant.

When Stackhouse returned to Beeleman's Lounge, as indicated, appellant directed him to take the truck to the Oasis and unload it. Stackhouse doubleparked in the street in front of the Oasis and began to unload the cartons onto the sidewalk with assistance from the tenant of an apartment above the tavern. Upon appellant's barmaid at the Oasis observing the truck's parking position and the sidewalk unloading, she telephoned to Beeleman's Lounge and suggested that appellant get back immediately to the Oasis.

Appellant did so and ordered Stackhouse to get the truck away from the front of the tavern, exclaiming in angry tone, "Are you crazy or something?". Stackhouse thereupon drove to the alley behind the tavern where he and the upstairs tenant unloaded the cartons into a garage across from the rear of the Oasis. Following this, he took the tractor and trailer out to the stockyards area of St. Louis, where he abandoned them, and rode back to the Oasis with a woman companion from the tavern, who had driven behind him in a car.

Upon returning to the Oasis, the two went to appellant's apartment adjoining the tavern, where appellant and the other alleged conspirators, with some women from the tavern, were by that time congregated. A barmaid from Beeleman's Lounge also joined the group—it being by then past 1:30 a.m., the closing hour of the taverns. The testimony of this barmaid showed that appellant had been trying to induce her to divorce her husband and as part of his campaign had sought to impress her with what he would be able to do for her. Thus, among other things, she testified that at the time Stackhouse left the other alleged conspirators at Beeleman's Lounge to set out on the theft, appellant had said to her, "If this goes off, I will be in the money," and that he had suggested that he would be willing to give her the Oasis or buy her another tavern "if you will stick with me." That evening at the party in his apartment he had also said to her son in her presence, "I can give your

mother everything in the world if she will just let me." He had followed this up with taking her out shortly thereafter to the garage, showing her the stacks of cartons and saying, "This all belongs to me and Bob Stackhouse."

As the foregoing would suggest, the barmaid from Beeleman's Lounge was one of the Government's principal witnesses. It was she who gave the testimony as to the conversation between Sheppard and appellant, of which he here complains. She stated in this portion of her testimony that as Stackhouse was going out the door, upon leaving Beeleman's Lounge to embark on the theft, Sheppard had remarked to appellant, "I don't believe anything that longlegged so-and-so says [referring to Stackhouse] until he produces the merchandise," and that appellant had responded, "Well, I am beginning to believe you."

A general objection was interposed by appellant's counsel to the prosecutor's question regarding this conversation, that "I will object to anything Walter Sheppard may have said." The argument made here is that Sheppard had not been sufficiently proved to be a member of the alleged conspiracy to entitle any statements on his part to be admitted against appellant; that the statement of Sheppard sought to be shown thus was legally incompetent as evidence; and that beyond its incompetency, it was highly prejudicial to defendant's defense as tending "to associate him with Stackhouse in the theft." Appellant's evidence in defense had consisted solely of his own testimony, primarily making denial of his having had any connection with, conversation about, or knowledge of the theft, or any possession of the stolen merchandise.

■ In the perspective and context of the part of the evidence which we have set out, it should not be necessary to engage in much demonstration as to the lack of substance in appellant's contention. It will be noted that what is involved is not a declaration made out of appellant's presence by Sheppard, but reciprocal and integrated utterance between the two of them. Or making analysis of the content and effect thereof on a more technical basis, if any incrimination against appellant could be regarded as existing in Sheppard's reference to Stackhouse's producing the merchandise, appellant's rejoinder thereto was sufficiently a concurrence therein to constitute the adoption by him of such incrimination as it is contended to contain—and within the formulation of Dean Wigmore, "thus becomes effectively the party's own admission." Wigmore on Evidence, 3rd Ed., Vol. IV, § 1069.

■ The historic common law rule that the adoption of another's statement may properly constitute an incriminatory admission still retains its vitality, except as to such an adoption as has previously been recognized as existing on silence; and the rule has to this extent been made the subject of approval and continued adherence in the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 8.01(3), (ii), 46 F.R.D. 161, 332.

■ But more than this, and in terms of trial realities, even if the testimony as to Sheppard's and appellant's conversation had been incompetent, it seems plain to us beyond a reasonable doubt that such implication of connection between appellant and Stackhouse as it is argued to contain could have had no convictional force or sway upon the jury in view of the strong sequential array of proof as to what the ties and incidents between them in relation to the stolen goods had actually been. Compare in principle United States v. Young, 422 F.2d 302, 308 (8 Cir. 1970); Slawek v. United States, 413 F.2d 957, 963–964 (8 Cir. 1969).

Affirmed.