UNITED STATES of America, Appellee,

v.

James Darrell WEAVER, Appellant.

No. 77–1357.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1977.

Decided Oct. 31, 1977.

crimes evidence and sufficiency of the evidence, are raised on this appeal. We affirm.

On March 30, 1976, appellant Weaver and Debra Lynn Dossey were arrested in Las Vegas, Nevada, and charged with an armed bank robbery in Mesa, Arizona. On June 3, 1976, Weaver and Dossey were convicted of the Mesa bank robbery. On July 12, 1976, Dossey was indicted for the robbery of the Capitol Branch of the First National Bank in Little Rock, Arkansas. On December 7, 1976, appellant Weaver was indicted for aiding and abetting and counseling Dossey in the commission of the Little Rock bank robbery. Appellant Weaver contends that the government should have attempted to indict him in July of 1976 when Dossey was indicted. According to appellant Weaver, the delay in bringing charges against him was unreasonable and intentional and violated his Fifth Amendment right to due process. We disagree.

W. R. Nixon, Jr., Little Rock, Ark., argued and on brief, for appellant.

Samuel A. Perroni, Asst. U.S. Atty. (argued), and W. H. Dillahunty, U.S. Atty., J. Eugene O'Daniel, Jr., and Robert L. Neighbors, Asst. U.S. Attys., Little Rock, Ark., on brief, for appellee.

Before STEPHENSON and WEBSTER, Circuit Judges, and MARKEY,* Chief Judge.

STEPHENSON, Circuit Judge.

James Darrell Weaver appeals from his conviction by a jury of aiding, abetting and counseling Debra Lynn Dossey[1] in the commission of an armed robbery of a federally insured bank on February 27, 1976, in violation of 18 U.S.C. § 2113(d) and § 2.[2] Numerous issues, including admission of other

 It should be noted that "the applicable statute of limitations * * * is usually considered the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). The due process clause, however, does play a limited role in protecting the defendant against oppressive delay. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Our review of the record convinces us that the trial court properly balanced "the reasonableness of the delay against any resultant prejudice to the defendant," *United States v. Jackson*, 504 F.2d 337, 339 (8th Cir. 1974), cert. denied, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975), and we find that appellant Weaver's right to due process was not

---

\* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Dossey's conviction of armed bank robbery in violation of 18 U.S.C. § 2113(d) was affirmed by this court in *United States v. Dossey*, 558 F.2d 1336 (8th Cir. 1977).

2. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas, presiding, imposed a sentence of seven years imprisonment and a $10,000 fine.

violated by any pre-indictment delay. *See United States v. Constanza*, 549 F.2d 1126, 1132 (8th Cir. 1977); *United States v. Quinn*, 540 F.2d 357, 360 (8th Cir. 1976).

■ At the time of Weaver's indictment on December 7, 1976, he was incarcerated in a federal prison at Terminal Island, California. On December 9, 1976, a writ of habeas corpus ad prosequendum was issued, directing Weaver's appearance for arraignment on December 21, 1976. Sometime during the week beginning December 13, 1976, the United States Attorney's Office in Little Rock, Arkansas, was informed by an Assistant United States Attorney in California that Weaver was being held in protective custody under another name as a witness in a California criminal case. The California authorities were reluctant to deliver Weaver to Arkansas until the California trial was completed. Apparently, the California trial was scheduled to begin during the first part of January 1977. On January 4, 1977, the trial court indicated that Weaver should be arraigned as soon as possible. A second writ was then issued and Weaver was arraigned on January 11, 1977. Appellant Weaver argues that the government's failure to promptly produce him for arraignment and trial violated the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and his Sixth Amendment right to a speedy trial.

18 U.S.C. § 3161(c) provides in part:

(c) The arraignment of a defendant charged in an * * * indictment with the commission of an offense shall be held within ten days from the filing date (and making public) of the * * * indictment, or from the date a defendant has been ordered held to answer and has appeared before a judicial officer of the court in which such charge is pending whichever date last occurs.

18 U.S.C. § 3161(j)(1) provides as follows:

(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

In denying the appellant's motion to dismiss, the district court stated:

Neither 18 U.S.C. § 3161, *et seq.*, nor the Plan for Prompt Disposition of Criminal Cases pursuant to the Speedy Trial Act of 1974 for the Eastern District of Arkansas provides any sanctions for failure to comply with the time limitations for arraignments. Under these circumstances, a motion for dismissal based upon the government's failure to arraign a defendant within the prescribed time limitation can only be maintained when there has been a delay of an unreasonable and prejudicial nature. In this case, the defendant was incarcerated for a conviction in another jurisdiction during the delay between his indictment and arraignment in the Eastern District of Arkansas. Thus, the defendant has failed to demonstrate how the delay was prejudicial.

In our opinion it would have been preferable for the government to file a motion requesting an extension during the period provided for arraignment under 18 U.S.C. § 3161(c). We conclude, however, that under the circumstances the delay was reasonable and the prejudice to the defendant was minimal. Furthermore, the appellant's trial was initially scheduled within the 60-day period prescribed by 18 U.S.C. § 3161(c). It follows that the district court properly denied appellant Weaver's motion to dismiss based on the delay. *See United States v. Page*, 544 F.2d 982, 985–86 (8th Cir. 1976).

On February 14, 1977, appellant Weaver's first trial began. During presentation of the government's evidence, the defendant moved for a mistrial because of an allegedly prejudicial statement made by one of the government's attorneys. The district court took the defendant's mistrial motion under advisement and granted the motion the following morning. On March 22, 1977, appel-

lant Weaver filed a motion to dismiss the indictment with prejudice on the grounds that the double jeopardy clause barred his retrial. The trial court denied the motion. Weaver now contends that the trial court violated his rights under the double jeopardy clause of the Fifth Amendment through judicial overreaching. In essence, the appellant argues that a mistrial was declared because the district court had decided to reconsider some of its evidentiary rulings and wanted to permit the government to introduce previously excluded evidence at the retrial.

As we stated in *United States v. Martin*, 561 F.2d 135 at 138 (8th Cir. 1977), the double jeopardy clause generally would not stand in the way of reprosecution where the defendant has requested a mistrial. Only in limited circumstances, where the judicial or prosecutorial error that prompts the defendant's motion is intended to provoke the motion or is otherwise motivated by bad faith or undertaken to harass or prejudice the defendant, does the double jeopardy clause bar retrial. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 2148, 53 L.Ed.2d 80 (1977). Assuming arguendo the district court's action could be characterized as error, we find that it is not the product of the kind of overreaching which would bar the defendant's retrial. It follows that Weaver's retrial did not violate his rights under the double jeopardy clause of the Fifth Amendment.

On April 13, 1977, appellant Weaver's second trial began. A substantial portion of the government's case was based upon the testimony of witnesses to whom appellant Weaver and Debra Lynn Dossey had made admissions during the planning and preparation of a subsequent bank robbery in Arizona. For example, Ann Louise Jagow testified to her conversations with appellant Weaver in Mesa, Arizona, on March 12, 1976, and March 15, 1976, approximately two weeks after the instant robbery. On March 12 Weaver stated to Jagow that he had robbed banks in Minnesota and Little Rock, Arkansas. Weaver encouraged Jagow to join him in his future plans and assured her that "he always knew what he was doing, that he had just always planned the robberies."

Jagow further testified as to conversations with appellant Weaver which occurred at a meeting held on March 15. The meeting, which was held in a motel room, was called for the purpose of discussing a future bank robbery in Arizona. Dossey, David Winans, Jim Arnold, appellant Weaver, and Jagow were present at the meeting. Weaver stated to Jagow that he had committed a robbery in Little Rock with Dossey. He described a certain robbery where he had parked beside a wall while Dossey, disguised and wearing a wig, had gone into the bank. After the robbery, Dossey and Weaver had escaped in a car. Jagow also testified that appellant told her that the car used in the Little Rock robbery was an El Camino.

Jagow additionally testified that on March 16, 1976, appellant Weaver directed her and Dossey to buy identical blue shirts and two wigs to be used in the Arizona bank robbery. The three then drove to a street across from a bank in Mesa. Dossey and Jagow put on their identical shirts and wigs and Dossey entered the bank by herself. When Dossey returned, Jagow was pushed out of the car and Dossey and Weaver sped away in the car.

Appellant Weaver contends that the trial court erred in allowing Jagow to testify about the Arizona robbery. The trial court admitted this evidence under Fed.R.Evid. 404(b) on the basis that it was relevant to the issues of identity and plan.[3] Immediately after Jagow's testimony concerning the Arizona robbery, the trial court instructed the jury as follows:

---

**3.** Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Now the Court has permitted in certain evidence that might suggest or indicate to the jury either other wrongs or other crimes in Arizona. Now you are not concerned with any other wrongs or crimes in Arizona, but the Court has admitted that only as it might bear upon the issue of identity of the people involved or person or persons involved in the robbery in Little Rock, Arkansas on February 27 and the modus operandi or the planning which might also go along with the question of identity. The jury may feel it is of no importance and disregard it entirely, but it has been admitted only because of its potential relevance on the issue of identity, plan and modus operandi and not for any other reason. You should not be concerned about whether there was any wrong or any other crime committed in Arizona.

■ Evidence of other crimes or criminal conduct is generally inadmissible unless relevant to establish: (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or (5) identity of the person charged with the commission of the crime on trial. *United States v. Jardan,* 552 F.2d 216, 218 (8th Cir.), *cert denied,* —— U.S. ——, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). As this court recently stated in *United States v. Maestas,* 554 F.2d 834, 836 (8th Cir. 1977), "Our task is to assess the relevancy and the probative value of the challenged evidence; if it meets the requirements of Rule 404(b) we may not reverse the ruling of the District Court unless we also find that the prejudice from admitting the evidence substantially outweighed its probative value. In making that evaluation, we must give great deference to the district judge, who saw and heard the evidence."

■ We are of the opinion that the evidence of the Arizona robbery was admissible to prove Weaver's identity as an aider and abettor and counselor of Dossey. Weaver's identity was properly at issue because the only eyewitness to the Little Rock robbery, the bank teller, testified she did not remember seeing appellant Weaver sitting in a car near the bank. The teller testified that a woman, later identified by her as Dossey, approached the drive-in bank on foot. The robber was described by the teller as having shoulder-length dishwater blond hair,[4] wearing rose-tinted wire-framed glasses, and carrying a canvas-like blue bag. During the robbery, Dossey pulled a pistol from her shoulderbag.

The Arizona bank robbery was close in time to the Little Rock bank robbery. *See United States v. Davis,* 551 F.2d 233 (8th Cir.), *cert. denied,* 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977); *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974). Additionally, the modus operandi of the Arizona bank robbery, as described by Jagow, was quite similar to the Little Rock bank robbery. *See United States v. Moody,* 530 F.2d 809, 810 (8th Cir. 1976). During the Arizona robbery, appellant Weaver parked the car near the bank and Dossey was given a purse and a gun. After putting on a wig and a shirt, Dossey approached the bank alone and on foot. She was wearing pinkish-tinted wire-framed glasses.

■ In light of the above, the evidence concerning the Arizona robbery was admissible under Rule 404(b). We are also satisfied that Fed.R.Evid. 403[5] presents no bar to the admission of the evidence concerning the Arizona robbery. Other government evidence placed appellant Weaver and Dossey together in Little Rock shortly before

4. Dossey was described by a Ramada Inn desk clerk as having light brown hair worn in an Afro style, thus giving rise to the inference that a wig was worn in the Little Rock bank robbery.

5. Rule 403 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the bank robbery. In addition, Weaver and Dossey flew from Little Rock to Phoenix, Arizona, the day after the robbery. The planning and execution of the Arizona bank robbery took place approximately two weeks later. The probative value of the Arizona evidence was not substantially outweighed by any prejudicial impact and it was properly admitted.

 It is questionable whether the district court should have admitted Jagow's testimony regarding appellant's reference to a bank robbery in Minnesota. This testimony, however, was limited on direct examination by the government to one brief answer and was not again referred to by the government. The reference was made by appellant in discussing the fact that he always planned the robberies. We are convinced that the error, if any, was harmless beyond a reasonable doubt.[6]

 Appellant also contends that Jagow was erroneously permitted to testify to statements made by Dossey. These statements were made during the course of the meeting on March 15 at which a future bank robbery was being planned. The record reveals that the statements attributed to Dossey were made in the presence of appellant Weaver. In addition, Jagow testified that both Weaver and Dossey told her the same story concerning the Little Rock robbery. Finally, upon inquiry by the district court, Jagow stated that Weaver himself had told her everything about which she had just testified. We are persuaded that because the appellant told Jagow the same story as Dossey's and the statements were made in Weaver's presence, they were properly admitted under Fed.R.Evid. 801(d)(2)(B) as adoptive admissions. *See United States v. Metcalf,* 430 F.2d 1197, 1198–99 (8th Cir. 1970).[7]

 The government called Wanda Thompson, a desk clerk at a Ramada Inn in Little Rock, who testified that Dossey registered for two guests on February 26, 1976. Dossey paid the first day in advance and paid for the second night (February 27) the following day. The clerk then testified that she received a long distance telephone call from Dossey on either Saturday (February 28) or the following Monday. Dossey told the clerk that there had been a death in the family and requested the motel to hold the luggage.[8] Appellant Weaver argues that Thompson's testimony as to what Dossey told her on the telephone was inadmissible hearsay. The government, however, argues that the statements by Dossey

---

6. Appellant Weaver also contends that the district court erred when it denied his motion for a continuance. According to appellant, he was surprised when the trial court apparently reversed its prior position and decided to allow the introduction of evidence of the Arizona robbery. Weaver claims that a continuance was necessary to allow him to prepare his case to rebut the evidence of his involvement in the Arizona robbery. Weaver's counsel, however, had observed Dossey's trial and had a transcript thereof in which this evidence was allowed. It is well settled that continuance is a matter resting within the discretion of the trial court. *United States v. Johnson,* 526 F.2d 600, 601 (8th Cir. 1975). Under these circumstances, we refuse to disturb that discretion.

7. Appellant argues that the admission of Dossey's statements violates his Sixth Amendment right of confrontation and should have been excluded under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This court has previously stated that the *Bruton* rule is limited to circumstances where the out-of-court statements are inadmissible hearsay. *United States v. Kelley,* 526 F.2d 615, 620

(8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976). Therefore, this case is controlled by *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), which requires a case-by-case analysis in determining whether the application of an exception to the hearsay rule complies with the confrontation clause. *See United States v. Scholle,* 553 F.2d 1109, 1119 (8th Cir. 1977). We are persuaded that Dossey's unavailability for cross-examination did not deprive the jury of a satisfactory basis for evaluating the truth of her extra-judicial declaration. Dossey's statement was certainly a declaration against her penal interest. In addition, Dossey's admissions did no more than corroborate what Weaver had said himself and were merely cumulative to his own admissions to Jagow. Therefore, Weaver was not prejudiced by the mentioning of Dossey's name in the context of Jagow's testimony.

8. The luggage was stored by the motel and was picked up on March 7 by a white male who was driving a blue and white El Camino.

were not offered to prove the truth of the matter asserted. According to the government, the statements were offered to prove that they were made in order to establish a foundation for a later showing that Weaver's and Dossey's absence was not attributable to a death in the family, but rather was due to the bank robbery and their abrupt departure from Little Rock. This court has recently stated that when statements are introduced for the purpose of proving their falsity with other independent evidence, they cannot properly be construed to be hearsay under the rationale of *Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). *United States v. Kelly*, 551 F.2d 760, 764–65 (8th Cir. 1977). Accordingly, we conclude that Thompson's testimony of Dossey's statements was not inadmissible hearsay.[9]

■ Finally,[10] appellant Weaver argues that there was insufficient evidence for the jury to convict him of aiding, abetting, and counseling Debra Lynn Dossey in the commission of the armed bank robbery. We are not persuaded by Weaver's argument, however, when the evidence is viewed, as it must be, in the light most favorable to the government. *United States v. Frye*, 548 F.2d 765, 767 (8th Cir. 1977). The government's evidence showed that Weaver and Dossey were observed in Little Rock in February of 1976 driving a blue and white Chevrolet El Camino with Minnesota license plates. This automobile was serviced in Little Rock on February 23, 1976, at Weaver's request. The same automobile was subsequently driven by Weaver shortly before the Arizona bank robbery, approximately three weeks after the Little Rock bank robbery. The Little Rock bank was robbed by Dossey on February 27, 1976, at approximately 12:15 p.m. Dossey approached the bank on foot from the direction of a small brick wall which separated the temporary bank building from an apartment parking lot. During the course of the robbery the teller gave the robber approximately $500 in one dollar bills as well as other currency.

On February 28 or March 1 the Ramada Inn desk clerk received a telephone call from Dossey, who stated there had been a death in the family and requested that the motel hold the luggage. Weaver and Dossey arrived at the Jim Arnold residence in Arizona on Saturday, February 28, 1976. They were driving a rental Ford LTD. During the evening of February 28, Weaver, Dossey, David Winans, and Jim Arnold and his wife drove to Las Vegas. While at Las Vegas, Winans asked Weaver where he had obtained all of his money. Weaver replied, "I hit a bank, dude," and that "I sent the chick to the window twice." During the same conversation, Weaver mentioned the use of a wig. Further government evidence showed that Weaver was in possession of approximately $5000 one day after the Little Rock robbery, although he and Dossey were unemployed prior to the robbery.

After Weaver and Dossey arrived at the Arnold residence on February 28, 1976, Linda Arnold overheard a conversation where Weaver, or Dossey in Weaver's presence, stated that they had come from Little Rock and had thrown a brown paper bag containing small bills into a trash can at the airport before leaving Little Rock. On March 15, 1976, Weaver told Jagow that he had participated in a robbery with Dossey in Little Rock. Additionally, Weaver stated that he had parked the car, the El Camino, beside a wall and Dossey had walked to the

---

**9.** "As a general rule, statements made by a co-conspirator in furtherance of the unlawful association are not hearsay and are properly admissible against all conspirators, whether or not a conspiracy is actually charged." *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975). Although Weaver was not formally charged with conspiracy, it is clear that he and Dossey were acting in concert. A persuasive argument can be made that Dossey's statements occurred while the parties were in flight and additionally were made in the furtherance of the conspiracy.

**10.** Although appellant Weaver also argues that he did not receive a trial by a fair and impartial tribunal, our review of the record convinces us differently. We find no basis for this allegation.

bank. This evidence was consistent with the physical description of the Little Rock bank and its surroundings.

When all the evidence is viewed in the light most favorable to the government, we conclude there was substantial evidence to support Weaver's conviction.

Affirmed.