## UNITED STATES of America

### v.

### Edward G. VENABLE.

### Crim. A. No. 77–170.

United States District Court,
E. D. Pennsylvania.

May 3, 1978.

26

Jeffrey M. Miller, Philadelphia, Pa., for Venable.

Breckinridge L. Willcox, Dept. of Justice, Fraud Section, Washington, D. C., for Government.

## OPINION

DITTER, District Judge.

Defendant, Edward G. Venable, was convicted by a jury of two counts of making false statements to a grand jury and acquitted on three counts of extortion. However, I granted defendant's motion for a new trial because the prosecutor had improperly commented upon Venable's failure to testify, thus violating his Fifth Amendment privilege against self-incrimination.[1] Defendant then moved to bar retrial on both false statement counts on the ground of double jeopardy and, as to one of the counts, on the basis of collateral estoppel. Following oral argument, both motions were denied. The defendant has appealed,

1. See *United States v. Venable*, 443 F.Supp. 178 (E.D.Pa.1977).

and this opinion is being filed to explain my reasons for denying his motions.[2]

■ At trial, the government's chief witness was Joseph Baldino, who testified that he gave defendant, the chairman of the Delaware County Housing Authority, $500. on three specified dates in 1973 as payment for Baldino's being awarded architectural work for the authority. The jury found defendant not guilty on each of the extortion counts arising out of these alleged occasions. Nevertheless, the jury also convicted defendant on Count V of the indictment, which, in essence, alleges that Venable lied during his grand jury testimony when he denied that he received these payments from Baldino. Defendant now argues that a reprosecution on Count V would be an unconstitutional, unfair relitigation of facts and allegations which were the subject matter of an earlier acquittal, thus violating the doctrine of collateral estoppel.[3] In other words, Venable asserts, the ultimate issue at trial was whether he received these payments and by acquitting him on the extortion charges, the jury decided that he had not. By retrying Count V, he continues, the government is simply retrying the extortion counts under the label of making a false statement. I do not agree.

In *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), the Supreme Court recognized that the doctrine of collateral estoppel is embodied within the Fifth Amendment guarantee against double jeopardy. Justice Stewart, writing for the majority, noted:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that *when a issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.* Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. *Id.* at 443, 90 S.Ct. at 1194 (emphasis added).

The Court in *Ashe* prohibited successive prosecutions based on the same evidence to protect the accused from having "to run the gauntlet a second time."[4] But Justice Stewart also commented that the principle must be applied with

. . . realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceed-

---

**2.** Defendant's motion to bar retrial on the ground of double jeopardy merits little discussion. Generally, the double jeopardy clause does not stand in the way of reprosecution where the defendant has requested a mistrial. *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). But double jeopardy may be invoked to protect the defendant against governmental actions intended to provoke mistrial requests and thereby subject the defendant to multiple prosecutions. *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081–82, 47 L.Ed.2d 267 (1976). Moreover, gross negligence of the prosecutor, which has the effect of harassing or prejudicing defendant, may preclude a retrial. *United States v. Martin,* 561 F.2d 135, 138–40 (8th Cir. 1977). Essentially, Venable argues that the prosecutor's comments were designed to abort the trial and even if they were not, the prosecutor is guilty of gross negligence in violating one of the most elemental principles of criminal law. However, after reviewing the entire rec-

ord, I have found no evidence that the prosecutor acted in bad faith or designed his comments to induce defendant's motion for mistrial and subsequent motion for new trial. Furthermore, I can not conclude that the prosecutor's statements, however violative of defendant's Fifth Amendment privileges, should be equated with gross negligence.

**3.** This argument is not directed at any reprosecution under Count IV, which charges defendant lied when he told the grand jury that he did not know of any payoffs to or kickback solicitations by politicians in exchange for rehabilitation construction work in Delaware County. Venable was also convicted on this count.

**4.** Justices Brennan, Douglas, and Marshall, while concurring, argued that a reprosecution based on facts involving the same criminal "transaction" which was the subject of an earlier acquittal should be prohibited.

ing, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude *whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration*" (footnote omitted) (emphasis added). *Id.* at 444, 90 S.Ct. at 1194.

There is no question that the same parties are involved. But the government contends, and I agree, that the jury could have and did ground its guilty verdict on evidence other than that which formed the basis for their acquittal on the extortion charge.

The keel for the decision in *Ashe* was a general verdict which, since it stood alone, made it impossible to ascertain "exactly what facts were necessarily found as a predicate to that verdict." *United States v. Brown,* 547 F.2d 438, 441 (8th Cir. 1977). The jury in the instant case also rendered a general verdict. But two notes from the jury show how it reached its decision. The first read:

"Sir, we believe that Mr. Venable was untruthful before the grand jury. We do not believe that the Government proved *any instances* of personal payoffs beyond a reasonable doubt.

Does this deal with a personal payoff or his personal knowledge of other payoffs?" (N.T. 6–24–6–25). (emphasis added).

After rereading the second paragraph of Count V to them,[5] I instructed the jury members that it was the government's contention that defendant "was untruthful because he did know that he had made a solicitation and that he had received money,

but he denied having made the solicitation and having received money" (N.T. 6–26). Shortly thereafter, I received the second note which said:

"Your Honor, we stand firm as to our decision of Mr. Venable's untruthfulness. However, we do not have enough evidence to find him guilty beyond a reasonable doubt on the first three counts of extortion. We are not sure that they took place *on the dates specified in the indictment.* Does this matter?" (N.T. 6–27). (emphasis added).

The jury was brought back into the courtroom and the members were individually polled on the perjury counts. Each responded guilty.

Thus, far from being unable to determine on what basis the jury decided to acquit on the extortion counts, it is evident that the jury believed that Venable had received the payments from Baldino, but that the government had not established on what dates the payments had been made. For example, more likely than not, the jury found Baldino's testimony that he made the first payment to Venable at lunch on May 24 or May 25, 1973, incredible.[6] The ultimate issue on each of the extortion counts was whether Venable had received money from Baldino on a specific date. As the jury said, it was "not sure that they [the payments] took place on the dates specified in the indictment." Therefore, it was proper that Venable be found not guilty on the extortion counts since proof of the respective dates was a prerequisite of the government's case.[7]

■ *Ashe* teaches that the pleadings, evidence, charge, and other relevant matters

---

5. That paragraph states:

At the time and place alleged, the defendant, Edward G. Venable, appearing as a witness, contrary to such oath, knowingly made declarations with respect to material matter which he did not believe to be true, to wit:

In that he stated he had no knowledge of any payoffs in connection with rehabilitation projects of the Delaware County Housing Authority, whereas in truth and fact as he then well knew and believed, he had made a request for a payoff from an architect involved in planning and designing rehabilitation projects for the Delaware County Hous-

ing Authority, and had received money from that architect.

6. Baldino testified that, while at a luncheon meeting with Venable and Jack Lynch at the Red Coach Grille in Bala Cynwyd on May 24, 1973, he paid Venable $500. But a stipulation was entered into evidence which established that there was no Red Coach Grille in existence at that location on that date and, in any case, the restaurant located there had stopped serving lunch, except for Sundays, in 1972.

7. The bill of indictment alleged in Counts I, II, and III, payoffs on May 24, 1973, July 27, 1973,

should be considered in determining whether the jury decided, by acquitting defendant on the extortion counts, the ultimate issue of Venable's receipt of these payments. This inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." 397 U.S. at 444, 90 S.Ct. at 1194, quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948). Here, the notes positively establish that despite the jury's finding that Venable did not receive payments on the particular dates charged in the indictment, it believed that he had received the payments on some occasion or occasions. In such an instance, the doctrine of collateral estoppel will not prevent reprosecution. See *Ashe v. Swenson,* supra, 397 U.S. at 459 n. 13, 90 S.Ct. at 1202.[8]

Even more persuasive is the jury's finding Venable guilty of making a false statement. The ultimate issue on Count V was not whether defendant had received payoffs on certain dates, but whether he had been untruthful in denying that he received payoffs at all. Collateral estoppel bars a defendant's retrial when an ultimate issue of fact has been decided in *his* favor—here, that ultimate issue was found in favor of the government. Although the trial was marred by prosecutorial misconduct, the fact remains that the ultimate issue on the false statement count was not found in defendant's favor but against him.

It was for these reasons that I denied defendant's motion to bar retrial.

and October 15, 1973, respectively. I instructed the jury, in part:

"Now, the bill of indictment here alleges that as to these payments they took place on or about a certain date. Now, in an ordinary case the proof need not establish with certainty the exact date of an alleged offense. It is sufficient that the evidence establishes that something took place on or about a certain time. However, in this case you are going to have to consider the significance of what the bill of indictment says and the significance of what the proof is. As I recall it, there is a difference." (N.T. 5–106).

8. Those cases cited by defendant, *United States v. Brown,* 547 F.2d 438 (8th Cir. 1977); *United States v. Nash,* 447 F.2d 1382 (4th Cir. 1971); and *United States v. Simon,* 225 F.2d 260 (3d Cir. 1955), do not fit into the particular situation presented here. In each of these cases, there was a general verdict on the only controlling issue in question.