UNITED STATES of America, Appellee,

v.

Robert Lee GREEN, a/k/a Hope, Appellant.

No. 79–5124.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 27, 1980.

Decided Dec. 18, 1980.

Leslie L. Gladstone, Baltimore, Md., for appellant.

Glenn L. Cook, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Robert Lee Green was charged with conspiracy to distribute heroin. 21 U.S.C. § 846.

At a jury trial of Green and two others, United States Special Agent Robert Dixon testified about the alleged conspiracy. Dixon had been working for four years for the Drug Enforcement Agency. Prior to that he was, for five years, a police officer in Washington, D. C. Defense counsel adroitly asked Dixon whether, at Green's arrest, his arms then exhibited the puncture marks frequently found on heroin users.[1] Dixon stated that he could not remember the name of the arresting officer.[2]

With that answer by Dixon, the cross-examination took on an added aspect favorable to the defendant, since a truly informational response was going to make Dixon look as though he either possessed a very poor memory or was disingenuous. Dixon, after examining the relevant government form, augmented his answer:

> Mr. Green was processed by myself at the U.S. Marshall's office. At the time he was arrested, I believe, by Special Agent McCormack. *He was currently incarcerated for armed robbery.* (Emphasis added.)

It is elementary, of course, that customarily reference to another, independent conviction of a defendant is altogether improp-

---

1. The objective of defendant's counsel was to show addiction, and hence personal use, as refutation of the contention that Green was a distributor. Testimony previously elicited from Dixon arguably supplied support for such a defense approach.

2. In answer to a question by the Court Dixon had responded that he, himself, had no knowledge "whether or not the arms or body of Mr. Green were examined when he was arrested."

er.[3] It can hardly be doubted that the impropriety was something of which an experienced United States Special Agent was aware. Green moved for and quite correctly was granted a mistrial.

Now Green is before us appealing from a denial of his motion to dismiss on grounds of double jeopardy. The district judge who had presided at the trial in which the mistrial was granted to Green[4] concluded:

All right. The Court is satisfied that Agent Dixon was not the individual who is in charge of the case, that this was not a tactic that was planned ahead of time by the Government, that this was a spur of the moment statement. Unfortunate, it is true, but via the agent. I think that he, personally, frankly—I think that although he intended to make a statement, and he probably intended it to have an effect on the Jury, he did not realize what effect it was really going to have and that was to end the case at that point against Mr. Green. He was agitated by the effective cross examination that was being conducted against him on this point of whether or not he had actually filled out the form, and he lost his cool, so to speak, and spilled the beans, and in doing so, resulting in a mistrial. But I do not believe it is a situation in which justice would be served by ending all prosecution. I do not believe it would be a violation of the double jeopardy clause to require the trial to commence again.

■ When a mistrial is declared without the defendant's request or consent, a new trial may be held, without violating the Double Jeopardy Clause, only if there was a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. *United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1078–1080, 47 L.Ed.2d 267 (1976). However, when a mistrial is declared at the defendant's request,

the considerations are different. *Id.* at 607, 96 S.Ct. at 1079. In such a situation, in the absence of prosecutorial or judicial overreaching or misconduct, " 'a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial[5] error.' " *Id.* quoting from *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). Nevertheless, as stated in *Dinitz,* the request by the defendant for a mistrial does not eliminate all possibility of a double jeopardy bar. Where the prosecutorial error was designed to lead the defendant into moving for a mistrial, there may not be a reprosecution:

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor' ... threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. *Id.,* 424 U.S. at 611, 96 S.Ct. at 1081.

■ The issue whether the prosecution deliberately provoked a mistrial becomes one for the district judge to resolve, and his determination will not be disturbed if supported by the record. *United States v. Gamble,* 607 F.2d 820, 823 (9th Cir. 1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781, *rehearing denied,* 445 U.S. 955, 100 S.Ct. 1609, 63 L.Ed.2d 792 (1980).

■ The Fifth Circuit interprets the bad faith necessary to constitute the Double Jeopardy Clause a bar to further prosecution as confined to "grossly negligent or intentional misconduct that seriously preju-

---

3. *E. g., United States v. Johnson,* 610 F.2d 194, 196 (4th Cir. 1979).

The government asserts no basis justifying a departure from the customary rule in Green's case. Indeed it characterized as "the proper remedy" the trial judge's grant of a mistrial because of the Dixon statement.

4. The case continued as to the codefendants, who were found guilty.

5. Green makes no assertion of misconduct by the district judge.

dices the defendant." *United States v. Davis*, 589 F.2d 904, 906 (5th Cir. 1979), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979). A trial court's determination that the judge's or prosecutor's action was not conducted in bad faith will not be set aside unless clearly erroneous. *Id. Cf. United States v. Venable*, 453 F.Supp. 25, 27 (E.D.Pa.1978), *affirmed*, 585 F.2d 71 (3d Cir. 1978), holding that a prosecutor's improper comment on the defendant's failure to testify, in violation of his Fifth Amendment rights, was not intended to induce a mistrial and could not be equated with gross negligence.[6]

▮ The initial question then becomes whether what happened was purposefully designed by anyone, prosecutor or witness, to bring about a mistrial. The district judge determined that Dixon did not contemplate that his spur-of-the-moment "blurt" would have that consequence. We find that conclusion to be supported by the record and not clearly erroneous.[7] As a reflexive counterpunch, the reference to Green's conviction for armed robbery lacks the appearance of a scheme to secure abortion of the present trial and retrial in circumstances presumably more favorable to the prosecution.

While not controlling on the question by any means, the absence of a prosecutorial desire for a mistrial is rendered somewhat more credible by

(1) the United States Attorney's attempt to have the district judge curatively instruct the jury to disregard Dixon's impropriety, in lieu of a mistrial;

(2) the fact that the jury proceeded to convict the two codefendants of conspiracy to distribute heroin.

Another question of some relevance is whether Special Agent Dixon is to be included within the term "prosecutor" for the purpose of those rules. Obviously, it is in the interests of the United States Attorney to use all reasonable steps to prevent such an occurrence as took place here. However, there is no indication of the slightest kind that this was other than a spontaneous "blurting out" by the agent in no way planned, anticipated, or condoned by the United States Attorney.[8] We, of course, hold the United States Attorney to high standards of conduct for he, as well as the courts, has a direct responsibility to insure not only that actual justice be done but that the appearance of justice as well be rigidly guaranteed.

However, it would be too simplistic to reach out and ensnare within the term "prosecutor" every federal agent involved in a criminal matter, including those involved in the collection of evidence and the preparation for trial, although control of the prosecution is strictly in the hands of others, i. e., members of the office of the United States Attorney. In this connection, it is perhaps not amiss to remind ourselves that other interests than those of the defendant are involved. His interests must

---

**6.** In *United States v. Rumpf*, 576 F.2d 818, 822 (10th Cir. 1978), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), the government's reference to two syringes in opening statement despite counsels' agreement that they would not be introduced in evidence was deemed insufficient to bar retrial following a mistrial asked for and obtained by the defendants. "Bad faith does not include mistakes or errors."

Double jeopardy did not bar retrial in *United States v. Beasley*, 479 F.2d 1124, 1127 (5th Cir. 1973), where the mistrial resulted from a question posed to a witness by the prosecutor which was "undoubtedly improper because it suggested that the defendant had been a fugitive from justice as a result of some undisclosed crime...." The court concluded that there was insufficient proof "that the prosecu-

tor intended to abort the proceedings in order to improve the chance of a conviction on retrial." The court was impressed by the fact, also present in the instant case, "that the district attorney preferred to continue with the first trial."

**7.** The same is true for the conclusion that the United States Attorney's office had no advance knowledge of, and in no way encouraged, the Dixon statement.

**8.** The Assistant United States Attorney said: "I was just as surprised as anyone else when the statement came out." Defense counsel stated that he did not suggest that the United States Attorney told Dixon to make the improper and unresponsive remark.

be scrupulously observed and protected. Nevertheless, the public interest in the prevention, punishment, and deterrence of crime cannot be totally ignored. The defendant's inconvenience in having to face a second trial weighed in the circumstances of this case against a total denial to the public of a right to have the issue of defendant's guilt or innocence litigated does not suffice to invoke the double jeopardy protections of the Fifth Amendment.

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction."

*United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).[9]

We have already quoted the Supreme Court's opinion in *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976):

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions.

However, when the prosecutor or the judge acts erroneously but without such a malevolent purpose,[10] retrial is not precluded even though the error was such as to present the defendant with a " 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial, judicial or prosecutorial error." *Id.* at 609, 96 S.Ct. at 1080.[11] We have concluded that there was adequate support in the record for the finding by the district judge that there was no judicial or prosecutorial intention to provoke a mistrial request.

**9.** The strongest thrust of Green's argument derives from the fact that, viewed from his perspective alone, the impact on him of the Dixon statement was equally injurious, whether it was cunningly contrived to force a defendant's demand for a retrial, or, as the district judge found, it was a spur-of-the-moment expression with no such evil motive. "What difference," the defendant may be expected to ask, "what he *thought*? It's what he *did* that hurt!"

Yet motivation frequently makes a difference, and it matters here. The invocation of the double jeopardy principle to bar retrial is the application of a strong sanction deemed necessary effectively to discourage despicable prosecutorial behavior such as a planned below-the-belt punch to force a defendant to seek mistrial. Where the underlying cause of the error is less serious, less likely to be aped in other prosecutions, different considerations have to be allowed sway. Green is a member of a large class of persons: those prosecuted for criminal offenses. If double jeopardy were extended to a case like his, where there was no attempt to achieve a defendant-requested mistrial, the class as a whole, though not Green individually, of course, could be expected to suffer.

From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

*United States v. Tateo, supra,* 377 U.S. at 466, 84 S.Ct. at 1589.

**10.** In this essential respect, the present case is fundamentally distinguishable from cases where a mistrial was rendered necessary by purposeful prosecutorial activity, as for example *United States v. Kessler,* 530 F.2d 1246, 1257 (5th Cir. 1976) ("... intentional misconduct by the Government regarding the AR–180, a known false exhibit, which caused serious prejudice to the defendants' rights to a fair jury trial.")

**11.** *Cf. Divans v. California,* 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977) (denial of stay by Justice Rehnquist):

Any order granting a mistrial at the behest of a defendant in a criminal case is typically based upon error or misconduct on the part of other counsel or the court. In order to elevate such a typical order into one which could form the basis of a claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for a mistrial.

Accordingly, we affirm.

*AFFIRMED.*

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

The majority and I are in substantial agreement as to the basic rules which govern the outcome of this case: Ordinarily when a defendant has successfully requested a mistrial because of judicial or prosecutorial error, the Double Jeopardy Clause is no bar to his retrial. But if a defendant was deliberately provoked into requesting a mistrial, then the Double Jeopardy Clause prevents a retrial. *See, United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); Holleman, Mistrials and the Double Jeopardy Clause, 14 Ga.L.Rev. 45 (1979). We differ, however, in how those rules are to be applied where, as in this case, there is more than mere judicial or prosecutorial error but less than a deliberate attempt by the government to provoke a mistrial. I think that, because defendant was the victim of deliberate misconduct on the part of a government agent who occupied a principal role in defendant's initial prosecution, and because this misconduct provoked defendant's successful motion for a mistrial, the Double Jeopardy Clause bars his retrial. To me, the constitution compels this result whether or not the government agent actually intended that a mistrial would result from his misconduct. I would hold that the motion to dismiss the indictment on the ground of double jeopardy should have been granted.

## I.

As I read the district court's findings, they are that Agent Dixon, not by agreement or plan of trial strategy arrived at with the Assistant United States Attorney who was trying the case[1] but on his own motion, intentionally and deliberately brought to the attention of the jury defendant's prior criminal record. The district court also found that Agent Dixon intended his remark to have an effect on the jury. Although a strategy conceived on his own, this was no mere inadvertence or "blurt" as the majority suggests. Indeed, when all of the circumstances are considered, the findings of the district court may well have been charitable; the record gives strong indications that Dixon was deliberately vindictive.

The district court's finding as to the deliberate character of the volunteered prejudicial testimony and its intended effect to hurt defendant has ample support in the record. Agent Dixon was a four-year veteran of the Drug Enforcement Administration. He had impressive credentials as a Metropolitan Police Department Officer in Washington, D. C., before joining DEA. Since joining DEA he had made over 150 arrests and participated in approximately 35 cases. Manifestly he was the agent in charge of the instant case; he sat at counsel table throughout the entire trial. Significantly, the government had been advised that defendant would not testify because of his record. Undoubtedly, as the agent in charge, Dixon had that knowledge.

When called as the government's last witness, Dixon testified, *inter alia,* that heroin dealers will not distribute heroin through heavy users. The government's other evidence had depicted defendant as a heroin distributor. Dixon's attention was directed to an entry in a ledger indicating that defendant had received a large amount of drugs for his personal use. Then defendant's attorney began to question Dixon about the DEA form which was filled out when defendant was arrested. It showed that defendant was a heroin user. That fact had been determined by the DEA agent who processed defendant by the routine examination of defendant's arms for needle marks. Thus, by this point in Dixon's testimony, he had significantly aided

---

1. In the colloquy following Dixon's prejudicial statement and defendant's motion for a mistrial, defense counsel stated that Dixon had a brief conversation with the prosecutor when Dixon went to counsel table to examine a record but that counsel did not claim that the prosecutor told Dixon to volunteer the prejudicial information. The prosecutor's response was in effect a denial that he counselled the misconduct.

the defense: he had said that heavy heroin users would not be used as distributors, that defendant had received a large amount of heroin for his personal use, and that defendant was a user. To discredit Dixon entirely as a witness incriminating defendant, defense counsel asked Dixon if he was the agent who had arrested defendant. Dixon said that he was not. Dixon was then asked to step from the witness chair to counsel table to examine the DEA form to see who signed as the arresting officer. In oral argument, we were told without contradiction that this process took several minutes. When Dixon returned to the stand, he admitted that he had processed defendant at the U.S. Marshal's Office, and he seized on this opportunity to add "He [defendant] was currently incarcerated for armed robbery."[2]

## II.

The majority's conclusion that the Double Jeopardy Clause does not proscribe a retrial on these facts rests upon two propositions: (1) Dixon was not a "prosecutor" within the meaning of the *Dinitz* rule, and (2) there was no finding that Dixon intended to cause a mistrial. I do not think that singly or in combination they support the majority's result.

I cannot read *Dinitz* as limiting the rule it articulates only to bad-faith conduct by the prosecutor. *Dinitz* says that "[t]he Double Jeopardy Clause does protect a defendant against *governmental actions* intended to provoke mistrial requests ...." (emphasis added) 424 U.S. at 611, 96 S.Ct. at 1081. Of course *Dinitz* also says that "bad-faith conduct by judge or prosecutor" bars retrials, *Id.* (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)), but I would not read the latter as an exclusive enumeration. In any event, Dixon was functionally little different from the prosecutor in this case. He was closely intertwined with the prosecution: he processed defendant when he was arrested, arrested the leaders of the heroin ring, and, with his intimate knowledge of the case, was the agent who sat at counsel table and assisted in the trial of the case. While I agree that the prosecution should not be tarred with misconduct by every government witness, as, for example, a witness who is unconnected to the government or even a government agent who played a minor role in the case, it should not be able to escape the consequences of misconduct by one who plays a principal role in the prosecution. In this respect, I think *Dinitz* fully applicable.

The second purported escape hatch from *Dinitz's* proscription is more troublesome. I accept as a fact that Dixon's testimony was not a deliberate effort to precipitate a mistrial. Dixon made a malicious attempt to harm defendant; but, the district court found, he intended nothing more.

There is a division of authority over whether *Dinitz* forbids reprosecution when a mistrial is caused by governmental bad-faith conduct short of an intention to cause a mistrial or whether it merely forbids reprosecution when the object of the misconduct was to cause a mistrial. The Fifth Circuit, in a series of decisions, has interpreted *Dinitz* as affording liberal protection against retrial in cases of deliberate government misconduct. For instance, in *United States v. Kessler*, 530 F.2d 1246, 1253–58 (5 Cir. 1976), the prosecution intentionally introduced a prejudicial false exhibit, and the defendant successfully moved for mistrial. The court acknowledged that under *Dinitz* retrial was normally permissible when trial ends on the defendant's motion. But the court found that "[w]here 'prosecutorial overreaching' is present, the interests protected by the Double Jeopardy Clause outweigh the public interest in conducting a second trial ending in acquittal or conviction." *Id.* at 1255–56. The court continued: "To find 'prosecutorial overreaching,' the Government must have, through 'gross

---

**2.** In granting a mistrial, the district court remarked:

    I think that this Agent certainly, with four and a half years with the DEA and five years before that with the Police Force in Washington, D.C., would know that such a statement would be impermissible.

negligence or intentional misconduct,' caused aggravated circumstances to develop which 'seriously prejudice[d] a defendant' causing him to 'reasonably conclude that a continuation of the tainted proceeding would result in a conviction.'" *Id.* at 1256. Based on this double jeopardy analysis, the court held that the Double Jeopardy Clause forbade the defendant's retrial, even though he had moved for mistrial. *See also United States v. Weaver,* 565 F.2d 129, 133 (8 Cir. 1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978).

The Tenth Circuit, by contrast, has narrowly interpreted the language of *Dinitz.* In *United States v. Nelson,* 582 F.2d 1246 (10 Cir. 1978), *cert. denied,* 439 U.S. 1079, 99 S.Ct. 860, 59 L.Ed.2d 49 (1979), the prosecutor intentionally induced a DEA agent to testify that the defendant was a "major trafficker" in drugs, and the defendant moved for a mistrial which was granted. The district judge characterized the testimony as being as "reprehensible as any he had ever heard." *Id.* at 1248. Nevertheless, the Tenth Circuit held that the Double Jeopardy Clause did not bar retrial.

The court followed an opinion by Mr. Justice Rehnquist sitting as a circuit justice in which the Justice permitted retrial where the defendant failed to show that the trial mistake "was committed by the prosecution or by the court for the purpose of forcing the defendant to move for a mistrial." *Id.* at 1249 (quoting *Divans v. California,* 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977). The Tenth Circuit concluded that the defendant must show that "the objectionable testimony . . . was the product of a governmental scheme intentionally calculated to trigger the declaration of a mistrial." 582 F.2d at 1249. Finding no such proof, the court saw no constitutional bar to the defendant's second trial.

I am persuaded that the approach of the Fifth Circuit is the better view. *Dinitz* did recognize that at least one form of prosecutorial misbehavior would foreclose retrial. *Dinitz* did not discuss the situation presented here: extreme and deliberate governmental misconduct short of an intentionally stimulated mistrial. Gross governmental misbehavior is drastically different from mere prosecutorial or judicial error. *Dinitz* contains language which supports the Fifth Circuit's distinction between mere error and "prosecutorial overreaching:"

> [W]here circumstances develop *not attributable to prosecutorial or judicial overreaching,* a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

424 U.S. at 607, 96 S.Ct. at 1079 (quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (emphasis added). Justice Rehnquist's opinion does not directly discuss egregious governmental misdeeds, although it admittedly supports the government's position; in any case, it does not necessarily follow that the views of a single justice represent the views of a majority of the Court.

Moreover, the Fifth Circuit decision is more faithful to the policies behind the Double Jeopardy Clause. A second trial subjects a defendant to the anxiety and expense which accompanies multiple prosecutions. The Double Jeopardy Clause protects a defendant from this burden except where the societal interest in "fair trials ending in just judgments" outweighs the defendant's interests. *United States v. Kessler,* 530 F.2d 1246, 1258 (5 Cir. 1976). When trial is brought to an end by egregious and deliberate misconduct of a government agent, the public interest in fair trials may not be served by retrial. If the prosecution has the chance to try its case more than once, its case becomes stronger through rehearsal and the likelihood of convicting an innocent defendant increases. Witnesses become more expert at relating their stories and more adept at fending off cross-examination. This case illustrates that double jeopardy concern. During the first trial, defense counsel was able to turn Dixon's testimony to his client's advantage. At a second trial, Dixon may well be more careful in his comments and make defense counsel's task more difficult.

In addition, if the Tenth Circuit approach is adopted, it will be difficult to protect defendants even from intentionally stimulated mistrials. It is nearly impossible, as a practical matter, to prove what a prosecutor or government agent was thinking when he caused a mistrial. In almost every case, only malicious conduct will be apparent on the record. In this case, for instance, it may well be that Dixon, an experienced drug enforcement agent, knew that a mistrial would probably result from his reference to Green's prior criminal record. Rather than merely trying to put another nail in defendant's coffin so as to offset his own damaging admissions, Dixon may well have wanted to end trial so that he could get off the stand and have a second shot at testifying. He was unfortunately not interrogated about his motives, but in any event, no one can delve into his inner thoughts. These possibilities and the difficulty of proof persuade me that the prophylactic effect of the Fifth Circuit's interpretation of *Dinitz* is the one we should follow.

In concluding that retrial of this defendant should be forbidden, I am fully aware of the public interest in the prevention, punishment and deterrence of crime. These are important considerations. Of equal, if not greater, importance is the principle that the government must deal fairly with those who are governed. The breach of fairness in this case, by one whose role was such a principal part of this prosecution, was so egregious that I would not permit defendant to be tried anew.