**UNITED STATES of America**

v.

**Edward G. VENABLE.**

**Civ. A. No. 77–170.**

United States District Court,
E. D. Pennsylvania.

Nov. 22, 1977.

Breckinridge L. Willcox, Dept. of Justice, Washington, D.C., for plaintiff.

Jeffrey M. Miller, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Defendant was convicted of making false statements to a grand jury. He seeks a new trial on the grounds that in closing argument the prosecutor commented upon defendant's failure to testify, thus violating the Fifth Amendment privilege against self-incrimination. For the reasons which follow, defendant's motion must be granted.

At trial, the government's chief witness was Joseph Baldino, who testified that he gave defendant, Edward Venable, the chairman of the Delaware County Housing Authority, $500. on three separate occasions in 1973 as payment for Baldino's being awarded architectural work for the authority. Baldino related that no one else was present when these illegal payments were made. The government showed that the defendant had appeared before a grand jury and had denied taking any payoffs and had also denied knowing others had done so. He was charged on three counts with extortion but was acquitted; however, he was found guilty on two counts of making false statements to the grand jury.

Baldino's testimony constituted the major part of the government's case.[1] In his closing argument, following a brief summary

---

1. Ten other witnesses were called by the government, only one of whom, Jack Lynch, offered any information relevant to the alleged payments. Lynch, a former business associate of Baldino, stated that he attended a luncheon meeting with defendant and Baldino sometime in 1973 and, after Venable had left the table where the three were sitting to go to the men's room, Baldino rose from his seat and told Lynch that he was going to give Venable some money. On cross-examination, Lynch revealed that he did not see any money being passed, that Venable said nothing about receiving money, and that money had not previously been discussed at the table.

of the evidence presented, the prosecutor commented:

> As we look at the defense evidence, if you do nothing else when you deliberate, ask yourself one question. What evidence has the defense put on to deny the allegations of Joseph Baldino? Nothing. (N.T. 5–18).

Defendant's counsel immediately interposed an objection. At side bar, he asked me to provide a cautionary instruction to the jury, to warn the government attorney that the statement was highly improper, and to grant a mistrial.[2] I refused the mistrial motion, but did advise the prosecutor that I was concerned with what he had said and that if he hadn't already crossed the border, he was "skirting awfully close to it." (N.T. 5–19). Following my denial of his motion, defense counsel then asked that I not caution the jury because he felt any admonition at that point would only underscore the problem. The trial then proceeded to conclusion.

▆ It is well established that a comment by the government upon the failure of defendant to testify invades the Fifth Amendment privilege against self-incrimination. *Griffin v. California*, 380 U.S. 609, 612, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965); *Linden v. United States*, 296 F. 104 (3d Cir. 1924). The error may be harmless, however, under all the circumstances, *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The test to be applied to the prosecutor's remarks is found in *United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1269 (2d Cir.), cert. denied 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970):

> Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? (citations omitted). The trend has been, cor-

rectly in our view, to treat the two adverbs in the conjunctive and to stress the "necessarily." Thus it has been held that *remarks concerning lack of contradiction are forbidden only in the exceedingly rare case where the defendant alone could possibly contradict the government's testimony* . . . (citations omitted) (emphasis added).

Venable contends that the government's statement was a comment upon his failure to testify because only he could deny or rebut Baldino's accusations. The government resists the new trial motion on three grounds: 1) the prosecutor's arguments were directed to the strength of the government's case and his closing was designed to support the credibility of Baldino's testimony, which had been attacked on cross-examination; 2) defendant is precluded from raising the issue at this time because he requested no curative instruction but, even so, any error was rectified in my charge to the jury; and 3) the error was harmless and it is extremely doubtful the comment swayed the jury. I find these arguments unpersuasive and hold the comment constituted prejudicial error.

A great number of cases have been cited by both sides concerning the extent, if any, to which a prosecutor is forbidden to stress the strength of his case because the jury may take it to be a comment upon the defendant's failure to testify. An examination of all of these cases is unnecessary. Suffice it to say that courts have refused to find such statements prejudicial where the comment was a fair rejoinder to defendant's attack on the credibility of a prosecution witness or witnesses, *United States v. Gimelstob*, 475 F.2d 157, 163 (3d Cir. 1973), cert. denied 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62, rhg. denied 414 U.S. 1086, 94 S.Ct. 606, 38 L.Ed.2d 491 (1973); *United States v. Lipton*, 467 F.2d 1161, 1168–69 (2d Cir.), cert. denied 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); where the comment was oblique and the court gave an

---

**2.** Actually, defense counsel requested that I reserve ruling on a motion for mistrial. I declined to reserve any ruling and advised counsel that the more proper course would be to move for mistrial. (N.T. 5–19).

immediate cautionary instruction or one in its final charge to the jury, see *United States v. Thurmond*, 541 F.2d 774, 776 (8th Cir. 1976), cert. denied 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977); *United States v. McCrae*, 344 F.Supp. 942, 946 (E.D.Pa. 1972), aff'd 475 F.2d 1397 (3d Cir. 1973); or where other witnesses were available to contradict the government's case. *United States v. Bartemio*, 547 F.2d 341, 346 (7th Cir. 1974); *United States v. Thompson*, 490 F.2d 1218, 1221 (8th Cir. 1974); *United States v. Catto*, 299 F.Supp. 697, 703 (E.D. Pa.1969). However, when the defendant is the only source to explain or deny the prosecution's evidence and he remains silent, courts have required a new trial where comments relate to the failure to deny or explain. *United States v. Handman*, 447 F.2d 853 (7th Cir. 1971); *Desmond v. United States*, 345 F.2d 225 (1st Cir. 1968); *Linden v. United States*, 296 F. 104 (3d Cir. 1924).[3] In *United States v. Flannery*, 451 F.2d 880, 882 (1st Cir. 1971), the First Circuit announced it would reverse whenever such comments were made if the defendant was the only one to contradict the government's evidence unless the court gave an immediate instruction which would dispel the prejudice.

The government first contends the prosecutor's comment was directed toward the strength of the government's case and was not intended to relate to the defendant's failure to testify. If this was the intent of the assistant United States attorney, the timing, emphasis, and previous arguments were, at best, unfortunate.

His speech to the jury was comparatively short—a little more than 14 pages of the record (N.T. 5–10 to 5–24). The remark to which objection is made came on the eighth page (N.T. 5–18). There were, however, four prior, similar comments.[4] No objection was made to these statements and since all came in the midst of argument about the government's evidence, it is only a mild distortion of logic to say they were made in support of the prosecution's case.

These comments did set the stage for the prosecutor's climax. During the course of his speech, the assistant U.S. attorney had mentioned seven government witnesses by name, outlining the highlights of their testimony and what inferences the government thought should follow from what they had said. Having conducted this review and made his argument, the prosecutor announced he was finished with what the government had shown: "So much for the Government's evidence." (N.T. 5–18). He then stated that the next thing for consideration was the case offered by the defense, saying, "As we look at the defense evidence . . . ."

With this as his introduction, the prosecutor next suggested the jurors should ask themselves one question, "What evidence has the defense put on to deny the allegations of Joe Baldino?" He then supplied the answer, "Nothing." (N.T. 5–18).

This is hardly an argument that Baldino was inherently trustworthy, that his testimony had the ring of truth, or that the surrounding facts and circumstances lent credence to what he had said. Quite to the contrary, the prosecutor had told the jurors they could turn away from their examination of the government's evidence and con-

3. See also *Kelly v. Stone*, 514 F.2d 18, 19 (9th Cir. 1975). A great many state cases have reversed convictions where defendant alone could refute the government's accusations. See, e. g., *State v. Dent*, 51 N.J. 428, 241 A.2d 833, 839–40 (1968); *Commonwealth v. Reichard*, 211 Pa.Super. 55, 233 A.2d 603 (1967); *State v. McElroy*, 96 N.J.Super. 582, 233 A.2d 677 (1967).

4. "The important thing for the members, for you members of the jury to consider, is that *there is nothing to contradict* the fact that there was a meeting, a luncheon meeting with Joe

Baldino present . . . ." (N.T. 5–12). The defendant was the only other person allegedly present at the meeting and thus the only person who could deny it had taken place.
"The Government submits that the only evidence on this point from either side is Joe Baldino." (N.T. 5–16).
"The only evidence of that is Joe Baldino and a Government exhibit . . . ." (N.T. 5–16).
"The defense has offered no evidence to show that the hiring of Joe Baldino was a normal and a routine and a prudent business judgment." (N.T. 5–17).

sider the fact that the defense had "put on" nothing to deny what Baldino had said. I can only assume that "put on" refers to the witness stand. Of course, the prosecutor knew—as did the jury—that only one man could absolutely contradict what Baldino had said and that man was the defendant.[5]

This clear reference to the defendant's failure to testify becomes even more obvious when it is born in mind that there were three witnesses whose testimony could have been interpreted to cast doubt on Baldino. Having been "put on" by the defense, Lawrence E. Hartley, Jr., the housing authority's assistant executive director, stated there had been many occasions when the defendant was critical of Baldino's designs and work. He also testified that in his opinion Baldino was not truthful in saying that in return for his payments to Venable he had obtained Venable's cooperation. Much the same thought was expressed by Charles A. Waters, Jr., a former executive director of the housing authority, who testified the defendant was more critical of Baldino than were other members of the authority and that he often took exception to proposals made by Baldino. Both Waters and John Paul Ryan, the executive director of the housing authority, said that Baldino had a bad reputation for truth and veracity. Waters and Ryan had been called as government witnesses. By ignoring the testimony of Hartley, Waters, and Ryan in asserting there had been no evidence to contradict Baldino, the prosecutor emphasized that only Venable could categorically do so and that Venable had not taken the stand.

"The prosecutor, who would argue the merits of the government's case, must sometimes walk a narrow line to avoid indirect reference to the defendant's failure to testify. No matter how delicately worded, a summation which points to the strength of the government's proof, points inevitably, albeit silently, to the weakness of the defendant's." *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976). Here the narrow line was ignored in a way that had all the delicacy and silence of a piledriver.

## II.

■ I also reject the government's contention that defendant waived his right to advance this issue because he failed to request an immediate, appropriate instruction. See *United States v. Nasta*, 398 F.2d 283, 285 (2d Cir. 1968). Actually, counsel initially asked for an instruction to the jury (N.T. 5–19) but decided to withdraw the request at the close of the side bar conference, concluding that it would be better not to remind the jury of the comment. This was not so much waiver as recognition that a band-aid may cover a wound but will not effect an instant cure. As pointed out in *United States v. Flannery*, supra, the government has no right to put the defendant in the dilemma of seeking an instruction which by emphasis may only make the matter worse—or of ignoring the remark and having the jury infer it was proper argument.

■ Although the government suggests the portion of my charge which dealt with defendant's failure to testify was adequate to dispel any prejudice, I am not convinced this is necessarily so. I instructed the jury that the defendant had the right not to take the stand and that no adverse inference was to be drawn from the fact that he exercised his constitutional privilege.[6]

---

5. Bribery is almost always committed in secret, and nothing was offered into evidence in this case to demonstrate the existence of witnesses to the three alleged payments. With respect to the luncheon meeting, Lynch testified that the transaction, if it did take place, occurred outside of his view in a men's room. See note 1, supra. In addition, no one else witnessed the two other alleged payments.

6. "There is another thing you should understand. Any person who is accused of a crime has a constitutional right not to testify. Any defendant has a right not to take the stand if he sees fit not to do so and the fact that a defendant has exercised that constitutional right does not give you, the jury, the power to draw an unfair or adverse interest concerning him.

"To be specific about it, in this case Edward Venable did not testify. This was his constitu-

While this would have been adequate in the ordinary case, it did not deal with the additional problem created by the prosecutor's comment here. In short, I did not tell the jury—and concluded I should not do so by reason of defense counsel's request at the time the remark was made—to disregard the prosecutor's statement, that despite what the prosecutor had said there was no burden on the defendant to take the stand, or anything else specifically aimed at putting the genie back into the bottle.

Finally, the government argues that the error was harmless and did not sway the jury. However, since the prosecutor's improper argument touched upon a Constitutional right, a new trial must be allowed unless it is determined to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In good conscience, I can make no such finding here. A new trial is required.

tional privilege. The fact that he exercised that right does not give you the right to draw any inference therefrom which would be adverse to him." (N.T. 5–78).