**UNITED STATES of America**

v.

**Edward G. VENABLE, Appellant.**

**No. 78–1262.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Sept. 7, 1978.

Decided Oct. 5, 1978.

---

Robert N. deLuca, U.S. Atty., Richard W. Beckler, Deputy Chief, Fraud Section, U.S. Dept. of Justice, Breckinridge L. Willcox, Atty., Fraud Section, U.S. Dept. of Justice, Washington, D.C., for appellee.

Jeffrey M. Miller, Nasuti, Miller & Fioravanti, Philadelphia, Pa., for appellant.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

On this appeal, the defendant Venable seeks review of a denial by the district court of his motion to bar his retrial on two counts of a five count indictment. At his initial trial, Venable was acquitted of three of the five counts in the indictment. As appears in the subsequent factual recital, the three counts of which he was acquitted are related to the two counts as to which retrial has been ordered.

Two principal issues are before us for consideration. The first is whether this appeal may be taken from the trial court's order since the effect of denying Venable's motion is to require that a retrial proceed. The second is whether the doctrine of collateral estoppel, as embodied in the constitutional guarantee against double jeopardy, precludes a retrial because certain facts necessary to sustain a conviction on the two charges to be prosecuted in the retrial had been established in Venable's favor during the original trial.

We hold that Venable's appeal is properly before us under the collateral order doctrine, and that retrial is not prohibited under the collateral estoppel doctrine.

## I

Edward G. Venable is the former Chairman of the Delaware County Housing Authority. He was indicted on April 13, 1977, by a federal grand jury on three counts of extortion under 18 U.S.C. § 1951 (1977)[1], and two counts of perjury under 18 U.S.C. § 1623 (1977)[2]. Counts I–III of the indictment alleged three instances in which funds were extorted from Joseph Baldino, an architect, in order that Baldino might be awarded contracts by the Housing Authority for the provision of architectural services. Count IV charged that Venable committed perjury when he denied before the grand jury any knowledge that other members of the Housing Authority were receiving payoffs. Count V alleged that Venable perjured himself when he denied that he himself had participated in receiving payoffs from Baldino.

Trial before a jury was commenced on July 18, 1977. The principal government witness was Baldino, who testified that he had paid Venable $500 on May 25, 1973, at a luncheon at the Red Coach Grill; $500 on July 27, 1973, at the Brass Rail Restaurant; and $500 on October 15, 1973, also at the Brass Rail Restaurant. The payoff at the Red Coach Grill was corroborated by the testimony of another government witness. However, following the close of the defendant's case, the government learned that the Red Coach Grill had been renamed the Franklin Stove Restaurant in late 1972, and had not been opened for lunch since October 1972. This information was disclosed to the district court judge and defense counsel, and these facts were stipulated to prior to closing arguments.

On July 26, 1977, the jury returned a verdict of not guilty as to the extortion counts, Counts I–III, but guilty as to the perjury counts, Counts IV–V. Viewing these verdicts as inconsistent, the trial judge refused to record them and sent the jury back for further deliberations. During the course of these deliberations, the jury sent the following note to the trial judge:

Sir, we believe that Mr. Venable was untruthful before the grand jury. We do not believe that the Government proved any instances of personal payoffs beyond a reasonable doubt.

Does this deal with a personal payoff or his personal knowledge of other payoffs?

In response to this inquiry, the district court judge reread Count V of the indictment to the jury. He then instructed the jury that it was the government's contention that Venable "was untruthful because he did know that he had made a solicitation and he did know that he had received money, but he denied having made the solicitation and having received money." N.T., vol. VI, p. 26.

After further deliberations, the jury then sent another note to the trial judge:

Your Honor, we stand firm as to our decision of Mr. Venable's untruthfulness. However, we do not have enough evidence to find him guilty beyond a reasonable doubt on the first three counts of extortion. We are not sure that they took place on the dates specified in the indictment. Does this matter?

Upon receipt of this note, the verdict was recorded.

Following entry of this verdict, the court granted Venable's motion for a new trial because the prosecutor had improperly commented on Venable's failure to testify, thus

---

1. "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a) (1970).

2. "Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1623(a) (1978).

violating his fifth amendment privilege against self-incrimination. *Venable v. United States,* 443 F.Supp. 178 (E.D.Pa. 1977). Venable then moved to bar retrial on the two perjury counts on the ground of double jeopardy and, as to Count V, on the ground of collateral estoppel. Both motions were denied.

■ While the notice of appeal was from the orders denying Venable's motions to "bar retrial on the ground of double jeopardy" and to "dismiss count five on grounds of collateral estoppel," the only issue raised in Venable's brief before us is the court's denial of his motion addressed to count five.[3] We therefore limit our discussion to that issue.

## II

■ An order of the district court is not generally appealable unless it is final within the meaning of 28 U.S.C. § 1291 (1977), or, if interlocutory, is made appealable by the terms of 28 U.S.C. § 1292 (1977). The final order requirement of § 1291 was given a practical interpretation when the Supreme Court announced the collateral order doctrine in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under this rule, immediate appeal is allowed from decisions "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225.

In this case, the order of the district court denying Venable's motion to bar retrial is not archetypically final in the sense that it terminates proceedings in the court below. Its consequence, rather, is to require that a new trial commence. Nor is the order an interlocutory one made appealable by · § 1292. If this court properly has appellate jurisdiction, it must therefore be because the appeal is from a collateral order of the type described in *Cohen v. Beneficial Loan Corp., supra.*

*United States v. DiSilvio,* 520 F.2d 247 (3d Cir. 1975), established the rule in this Circuit that the district court's denial of a motion to dismiss based on a claim of double jeopardy is a final and appealable order under the collateral order doctrine.[4] The double jeopardy claim is collateral in sense that it is independent of the issue of guilt or innocence of the crime charged. Also, the claim is of constitutional dimension and its very substance—the right to be free from trial twice on the same issue— would be defeated if the appellant were required to await appellate review until after the second trial.

Recently, in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court confirmed that a pretrial order denying a motion to dismiss an indictment on grounds of double jeopardy falls within the *Cohen* collateral order doctrine and thus satisfies the jurisdictional prerequisites of § 1291.[5] The court cau-

---

**3.** A collateral estoppel claim arises in the context where facts determined in favor of a criminal defendant in the prosecution of one offense are sought to be established adversely to the defendant in a subsequent prosecution for a second offense. Since the appellant does not contend before us that the perjury charges to which he will be subject on retrial constitute the same offense as the extortion charges on which he was acquitted, we are not called upon to determine whether the "same evidence" test or the "same transaction" test properly defines the scope of the "same offence" phrase in the double jeopardy clause. *Compare Ashe v. Swenson,* 397 U.S. 436, 452–60, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring) *with id.* at 463–64, 90 S.Ct. 1189 (Burger, C. J.,

dissenting). *See generally* The Supreme Court, 1976 Term, 91 Harv.L.Rev. 70, 101–14 (1977).

**4.** *See also United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034 (3d Cir. 1975) (state criminal defendant may obtain federal habeas corpus review of state court's rejection of double jeopardy claim prior to second trial); *United States ex rel. Stewart v. Hewitt,* 517 F.2d 993 (3d Cir. 1975) (same).

**5.** In response to *DiSilvio* and *Abney,* this court, in *United States v. Inmon,* 568 F.2d 326 (3d Cir. 1977), has outlined the procedural context in which pretrial double jeopardy claims should be raised. A pretrial double jeopardy hearing must be held at which the criminal defendant

tioned, however, that not all claims asserted in the motion to dismiss are immediately appealable. Because the *Abney* decision was based on the special considerations attaching to double jeopardy claims, the Supreme Court held that immediate appeal of other claims raised by the motion to dismiss would be permissible only if such claims independently fell within the *Cohen* exception.

■ Venable's claim here that retrial on Count V is barred by the doctrine of collateral estoppel is properly a fifth amendment claim inasmuch as *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), holds that the federal law of collateral estoppel is embodied in the constitutional guarantee against double jeopardy. If the government is collaterally estopped from establishing at a second trial those facts necessary to sustain conviction on the crimes charged, Venable's right not to be subject to a second trial will then have been vindicated. Venable's claim is thus of constitutional magnitude; the protection afforded by embodiment of the collateral estoppel doctrine in the double jeopardy clause is precisely analogous to the traditional protection afforded by that clause. Moreover, denial of review at this time may result in irreparable injury if, after retrial, Venable's double jeopardy claim is found to be meritorious. We therefore hold that the district court's denial of the motion to bar retrial is an appealable collateral order which vests this court with § 1291 jurisdiction.

### III

Venable's basic contention is that his retrial on Count V of the indictment is prohibited because his acquittal on the extortion charges contained in Counts I–III established conclusively certain facts in his favor which would be necessary to sustain his conviction for perjury. He argues that the ultimate issue determined at trial of the extortion charges was whether he had received payoffs from Baldino, and that his acquittal on those charges conclusively establishes the fact that he had not received such payments. Thus, he contends, a conviction cannot be sustained on grounds that he perjured himself before the grand jury when he denied having received these payments.

### A

A threshold issue, raised by the government, is whether the doctrine of collateral estoppel has any application to this case. There are two circumstances in which collateral estoppel might come into play because facts litigated during one criminal prosecution are implicated in a second prosecution. First, the defendant might be acquitted in a first trial and then prosecuted anew in a second trial on a related charge—related in the sense that proof of the same facts are necessary to sustain convictions on both charges. In this situation, distinct but related charges are prosecuted in unrelated trials. Second, the defendant may seek a new trial because of error committed during his original trial which resulted in an acquittal on one count but conviction on a related count. If a retrial is ordered,[6] the question is then presented whether the retrial, or the litigation of certain issues in such retrial, is precluded by the doctrine of collateral estoppel. This situation is presented in the instant case.

The first category of case described above—distinct prosecutions on related issues—is the one most clearly calling for application of collateral estoppel and double

---

bears the burden of going forward in asserting his double jeopardy claim. Once a non-frivolous claim has been asserted, the government, to defeat the claim, assumes the burden of persuasion by a preponderance of the evidence. Here, the district court judge was not required to conform to this procedural format since there appears to have been no disputed issue of

fact, but only a ruling of law concerning the scope of collateral estoppel.

6. For purposes of vindicating a defendant's double jeopardy claim, we perceive no distinction between a retrial ordered by the district court in granting a defendant's motion and one ordered by an appellate court reversing a district court's denial of such motion.

jeopardy safeguards. Without this protection, the defendant would be vulnerable to multiple prosecutions by a strategic severance of related counts. Consequently, the policy of repose which underlies the double jeopardy guarantee would be eroded. *See Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), holding that the federal law of collateral estoppel was embodied in the constitutional double jeopardy guarantee, was decided in this posture. In *Ashe,* the defendant was convicted for robbing one of a group of poker players after he had been acquitted in a prior prosecution for robbing another of the poker players during the same robbery. The Court found that application of the collateral estoppel doctrine required reversal of the conviction because the issue of whether the defendant had participated in the robbery had been conclusively decided in his favor in the first prosecution. The court refused to allow the state to treat "the first trial as no more than a dry run for the second prosecution . . . ." *Id.* at 447, 90 S.Ct. at 1196.[7]

A more difficult issue, and the one with which we are faced on this appeal, is presented as to the applicability of collateral estoppel and double jeopardy safeguards when a new trial is ordered after the defendant has been acquitted on one count but convicted on a related count in the same prosecution. In this circumstance it is generally not the case that the government has abused its prosecutorial authority by ·

instituting piecemeal proceedings against a defendant. Invocation of the guarantee against being placed twice in jeopardy must instead rest on the fairness that is due any defendant subjected to our criminal process.

In support of its contention that collateral estoppel has no application when a defendant has been acquitted in part and convicted in part in the same prosecution, the government cites Judge Friendly's opinion in *United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960). There, in a nonjury trial, the defendant was found not guilty of forgery, but guilty of uttering. The Court of Appeals reversed because of the inconsistency of these decisions on the particular facts of the case. The case was remanded for a retrial of the uttering count, a majority of the panel believing that this was not prohibited by the double jeopardy clause.[8] No evidentiary restrictions were imposed on the retrial. The court stated that "[t]he government's inability to appeal an acquittal on one count in a criminal case should not render this *res judicata* where the defendant has successfully appealed a conviction on another count, at least when the appeal was for inconsistency." 274 F.2d at 905.

■ *Maybury* however, is not this case. *Maybury* attacked the validity of his conviction because it was inconsistent with his acquittal. Application of collateral estoppel in that circumstance "would convert the guarantee of double jeopardy from a shield into a sword." *Id.* Here, Venable raised

---

7. A similar tactic was utilized by the government and a similar result reached by the Court in *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In that case, the defendant had been acquitted of a conspiracy · to defraud the United States by presenting false invoices and making false representations to a ration board. Thereafter, he was convicted of the substantive offense of uttering and publishing as true the very same false invoices which had been in issue at the first trial. The court held that the doctrine of res judicata, at that time yet to be embodied in the constitutional guarantee against double jeopardy, required reversal of the conviction because the jury's acquittal in the earlier conspiracy trial constituted a determination favorable to the defendant

of facts essential to conviction on the substantive offense.

8. Judge Friendly differed from the majority of the panel in expressing his view that retrial on both the forgery and uttering counts was not barred by the fifth amendment. Since the defendant had attacked his conviction on the ground that it was inconsistent with his acquittal, Judge Friendly concluded that, whether rationalized on grounds of waiver or on the basis of considerations of fairness between government and defendant, the acquittal should be opened for consideration on remand. 274 F.2d at 905.

an independent trial error [9] committed by the government which required a new trial. In doing so, he cannot be said to have waived his right to assert his acquittal. Admittedly, the fact that the jury returned inconsistent verdicts undermines the confidence that can be placed in its determination. *See* Note, Twice in Jeopardy, 75 Yale L.J. 262, 285 (1965). But to deny Venable the right to rely on this determination would be to penalize him because of idiosyncracies in the jury deliberation process. At least where the defendant does not attack his conviction on the ground of its inconsistency with his acquittal,[10] we think that he cannot be denied the right to rely on that acquittal in the assertion of his double jeopardy claim. We therefore hold, contrary to the government's contention, that the collateral estoppel doctrine is available to Venable here as a defense to retrial if otherwise properly applicable in this case.

### B

Since we have determined that Venable may properly assert his claim of collateral estoppel it is necessary to consider the scope of that doctrine and its effect on the retrial ordered by the district court. Our inquiry starts with the instruction afforded by *Ashe v. Swenson, supra.* In *Ashe,* collateral estoppel was stated to mean "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The scope of this doctrine was then described. The Court stated that the doctrine should not be ap-

plied "with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444, 90 S.Ct. at 1194. It further explained that "[w]here a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* A more technically restrictive application of this test would effectively eviscerate the rule of collateral estoppel in criminal proceedings. *See* Mayers and Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1 (1960).

The practical application intended by *Ashe* was given effect by this court in *United States v. Pappas,* 445 F.2d 1194 (3d Cir. 1971), *cert. denied sub nom. Mischlich v. United States,* 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1972). An acquittal on a conspiracy count was held not to bar retrial of a conviction on a substantive count where the trial court, on a motion to dismiss, failed to find that the conspiracy had as its object any of the violations alleged in the substantive count of the indictment. This dismissal did not establish that the defendant Mischlich had failed to commit the acts comprising the substantive count, but only that the court had failed to find that the alleged conspiracy had as its object the substantive crime alleged in the conspiracy indictment. Retrial was not barred by *Ashe* because, as this court stated,

> where the defendant has attacked his conviction on the ground that it is inconsistent with his acquittal, it would seem *a fortiori* that collateral estoppel could be asserted when a retrial was required due to unrelated errors committed by the government. This result is buttressed by the Supreme Court's decision in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which, by subsuming the collateral estoppel doctrine under the fifth amendment double jeopardy guarantee, enables a defendant to escape retrial entirely rather than merely assert collateral estoppel as a defense.

---

**9.** *See* p. 73 *supra.*

**10.** In *United States v. Simon,* 225 F.2d 260 (3d Cir. 1955), the defendant was granted a retrial on a charge of *possessing* stolen goods because of the apparent inconsistency in a prior jury verdict convicting him on this count but acquitting him on a count of *receiving* stolen goods. On appeal from his conviction following retrial, this court held that the facts established in his favor by the acquittal on the "receiving" count could not be relitigated in a retrial on the "possession" count because of res judicata. Insofar as this case permits the defense of res judicata [collateral estoppel] to be raised in a retrial

It is a prerequisite for the invocation of the doctrine of collateral estoppel that the first acquittal foreclose the possibility that a rational jury might base its verdict in the second prosecution upon a ground other than that decided by the first acquittal. Here, such possibility was not precluded because there is no inconsistency in finding that Mischlich did not participate in a conspiracy having as its object the making of false entries in the Bank's ledgers and in finding that in fact he did make, or cause to be made, such entries. 445 F.2d at 1198.

This court in Pappas went on to consider the applicability of this Circuit's doctrine prohibiting "re-litigation of decided facts." This doctrine, which does no more than enable a criminal defendant to raise as a defense the doctrine of res judicata [collateral estoppel] when facts have been determined in his favor in a previous prosecution, was first announced in United States v. DeAngelo, 138 F.2d 466 (3d Cir. 1943), and later applied in United States v. Simon, 225 F.2d 260 (3d Cir. 1955); see note 10 supra. Both of these cases antedate Ashe, hence they speak not to constitutional prohibitions, but rather to res judicata as a defense in a second criminal trial. In this respect, they are clearly superceded by Ashe insofar as Ashe would entirely bar a retrial, when collateral estoppel effect is given to facts established in favor of the defendant which are necessary to sustain a conviction in a second prosecution. They retain their vitality, however, to the extent that they would allow the defense of collateral estoppel to be raised in a second proceeding as to facts previously established but not necessary to sustain the conviction sought at retrial. As the court stated in DeAngelo, "[t]he conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy." 138 F.2d at 468.

The district court properly evaluated Venable's collateral estoppel claim in light of Ashe, and determined that retrial on the perjury count could proceed. In so ruling, the trial judge relied heavily on the two notes which he received from the jury. Based on those notes he concluded that Venable's acquittal resulted merely from the government's failure to establish that the extorted payments had been received on the particular dates alleged in the indictment. Since the perjury count was based on Venable's denial that he had ever received such payments, the court concluded that retrial would not be barred under Ashe.

After reviewing the entire record,[11] we are satisfied that a rational jury could have concluded that Venable had received the extorted payments, but not on the dates charged by the government. Confusion as to the dates on which the alleged payoffs were made was reflected in the evidence presented at trial. Baldino testified that the records of the payoffs which he entered did not always coincide with the dates on which he made the payoffs. N.T., vol. III, pp. 148–150. Moreover, both the government and the defendant stipulated at the close of trial that the restaurant at which the May 25, 1973 payment was allegedly made during lunch was not open for lunch during that period, and that the restaurant's name had been changed from the name testified to by the government's witnesses. N.T., vol. V, p. 7. Furthermore, through a defense witness, Venable claimed that he was in Easton, Pennsylvania, not Philadelphia, on May 24, 1973, and could not have received any payoffs allegedly made on that date. N.T., vol. IV, pp. 144–148. Indeed, in his charge to the jury, the district court judge not only stressed the significance of particular dates as they per-

11. We are not inclined to rely wholly on the notes written by the jury in ascertaining the grounds for the jury's decision. Ashe requires that we not restrict our review to portions of the record in determining what this particular jury decided. Rather, Ashe requires that we review the entire record in order to determine what a rational jury could have decided. We observe also that the notes themselves are not entirely free from ambiguity.

tained to Venable's alleged alibi defense but carefully underscored the significance of the payoff dates as alleged in the indictment because of the apparent discrepancy between those dates and the proof adduced at trial. N.T., vol. V, pp. 106–114.[12] The trial judge took pains to ensure that the jury would have a copy of the indictment at all times during their deliberations.

■ When the entire record of this trial is considered, including the jury's notes, we have no hesitancy in resolving, as did the district court judge, that a rational jury could have concluded that Venable had received extorted funds on dates other than those alleged in the indictment.[13] Having concluded that Venable's retrial on count five of the indictment is not barred by collateral estoppel, we will affirm the February 24, 1978 order of the district court which denied Venable's motion, thereby requiring retrial. For purposes of such retrial, we will therefore remand to the district court for the additional proceedings required.

---

**12.** The district court judge charged in part:

Now, the bill of indictment here alleges that as to these payments they took place on or about a certain date. Now, in an ordinary case the proof need not establish with certainty the exact date of an alleged offense. It is sufficient that the evidence establishes that something took place on or about a certain time. However, in this case you are going to have to consider the significance of what the bill of indictment says and the significance of what the proof is. As I recall it, there is a difference.

N.T., vol. V, p. 106.

**13.** The cases cited to us by Venable in which collateral estoppel either bars retrial or eliminates certain previously adjudicated issues in a second prosecution of a criminal defendant, *see United States ex rel. Rogers v. Lavallee*, 517 F.2d 1330 (2d Cir. 1975); *United States v. Nash*, 447 F.2d 1382 (4th Cir. 1971); *United States v. Fusco*, 427 F.2d 361 (7th Cir. 1970), are not particularly helpful in the present case since an appraisal of what a rational jury could have determined at the first trial must inevitably turn on the record developed at that particular trial.